UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
Derek E. Dearwater,           :
          Plaintiff,          :
                              :
          v.                  :    File No. 1:06-CV-154
                              :
Bond Manufacturing Company,   :
          Defendant.          :
```

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Paper 6)

Plaintiff Derek E. Dearwater filed this action against Bond Manufacturing Company ("Bond"), alleging breach of contract and breach of the covenant of good faith and fair dealing against Bond for wrongfully terminating his employment.  The case is currently before the Court on Bond's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for improper venue under Fed. R. Civ. P. 12(b)(3).

For the following reasons, I recommend Bond's motion be **GRANTED.**

## I. BACKGROUND

The following facts are assumed to be true for the purpose of the pending motion.  Bond is a California corporation with its principal place of business in Bay Point, California. (Paper 1-1, ¶ 4).  Bond sells outdoor

consumer products to lawn and garden retailers and distributors. (Id.; Paper 7, ¶ 3). Bond owns no property in Vermont, is not registered to do business in Vermont, has no Vermont telephone listing, and does not advertise in any Vermont-based publications. (Paper 6, at 2). Despite its nationwide sales, there are no Bond sales personnel in Vermont. (Paper 7, ¶ 5). Bond does have an East Coast sales representative whose sales region includes Vermont. (Id.). American Marketing Alliance, Inc. ("AMA") is Bond's sales representative in New England. (Paper 28, ¶ 3). The primary focus of Bond's sales efforts in New England is mass-marketing and chain retail stores such as Lowe's and BJ's. (Id.). Bond's marketing effort in Vermont is limited to the two AMA employees who take telephone calls from Vermont retailers, visit Vermont stores, and send out Bond catalogs when requested. (Id.).

Bond has made direct and indirect sales to Vermont customers in the past. Between 1999 and 2006, Bond has sold products to 28 Vermont customers. (Paper 23-3). Only one of those customers, Gardener's Supply, has purchased Bond products every year during that seven-year time span. (Id.). In 2006, four Vermont customers purchased Bond

products.  (Id.).  Sales to Vermont customers have declined
each year between 1999 and 2006 from 2.30% of Bond's total
sales in 1999 to .03% in 2006. (Id.).  Bond primarily sells
its products to large national chain stores such as Home
Depot, Target and BJs.  It also sells its products to
Massachusetts-based Aubuchon Hardware, which maintains 27
stores in Vermont. (Paper 23-4, ¶ 14).

Dearwater resides in Stowe, Vermont. (Paper 1-1).
Dearwater located a job with Bond through a national
advertisement on CareerBuilders.com. (Paper 23-5).  The
position, Vice President of Sales-Western Division, was
also listed on the San Francisco Bay Area sub-site of
Craigslist.com.[1]  (Paper 6).  The job posting required a
Bachelors Degree, 8 + years of experience in sales
management, including national accounts, and willingness to
travel up to 25% of the time. (Paper 23-5).  In addition,
the job posting indicated that "Local candidates are
strongly preferred, but not required!" (Id.).

Although a Vermont resident, Dearwater sent his resume
and PowerPoint presentation to Bond in California, but
engaged in preliminary negotiations for employment from his

---

[1] The Court notes that there are no access restrictions on Craigslist and
that an individual in Vermont has access to any and all regional sub-sites.

home in Vermont. (Paper 23-4, ¶ 7). He then traveled to
California for an interview with Bond. (Paper 6, at 3).
Bond hired Dearwater in April 2006 with the understanding
that Dearwater would relocate to California to work from
Bond headquarters in Bay Point. (Paper 1-1, ¶ 10; Paper 6,
at 4). In the interim, Dearwater worked from Vermont.
(Id.). During Dearwater's employment, Bond supported a
home office for Dearwater in Vermont, which included a
phone, fax, DSL line and computer. (Paper 23-4, ¶ 10). In
addition, although Dearwater was Vice President of the
Western Division, upon the Bond's request he visited
Gardener's Supply in Williston, Vermont. (Id. at ¶ 11).

The parties entered an employment Agreement effective
April 10, 2006. (Paper 1-3). The Agreement was not
executed, however, until June 2006. (Paper 23-4, ¶ 19).
The document included a provision stating that it "shall be
governed by and construed in accordance with the laws of
the State of California." (Paper 7, ¶ 24).

Daryl Merritt, Bond's Chief Operating Officer,
recommended to three other managing officers that Dearwater
be terminated. (Paper 7, ¶ 30). The recommendation was
made at Bond's offices in California. (Id. at ¶ 31). On

4

July 5, 2006, Bond fired Dearwater via email before he relocated to California. (Paper 1-1, ¶ 11; Paper 23-4, ¶ 20). Dearwater alleges he was fired without notice or cause. (Paper 1-1, ¶¶ 11, 14-15).

On August 4, 2006, Dearwater filed this action for breach of contract and breach of the duty of good faith and fair dealing. On September 7, 2006, Bond filed a motion to dismiss for lack of personal jurisdiction and improper venue. On October 6, 2006, the Court granted a joint motion for extension of time for limited discovery on the jurisdictional issue, making Dearwater's response due on December 12, 2006 (30 days from discovery responses). On January 23, 2007, the parties moved jointly to continue the motion hearing to provide more time for discovery on the jurisdictional issue. (Paper 20). The Court granted the joint motion and Dearwater filed his opposition to Bond's motion to dismiss on March 5, 2007. (Paper 23). The parties then stipulated to an extension of time for Bond to reply to Dearwater's opposition. Bond filed its reply on March 27, 2007. (Paper 27). A hearing on Bond's motion to dismiss the complaint was held on August 7, 2007.

## II. <u>DISCUSSION</u>

5

A. Rule 12(b)(2) – Lack of Personal Jurisdiction

In considering a Rule 12(b)(2) motion to dismiss, the Court takes all allegations in the light most favorable to the plaintiff. Ben & Jerry's Homemade, Inc. v. Coronet Priscilla, 921 F. Supp. 1206, 1209 (D. Vt. 1996). Nevertheless, the plaintiff bears the burden of establishing sufficient contacts with the forum state to give the court jurisdiction over the defendant. Chaiken v. VV Publ'g Corp., 119 F.3d 1018, 1025 (2d Cir. 1997); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d. Cir. 1996); Tom and Sally's Handmade Chocolates, Inc. v. Gasworks, Inc., 977 F. Supp. 297, 299 (D. Vt. 1997). The plaintiff must make only a prima facie showing of jurisdiction through its own affidavits and supporting materials when there has been limited discovery on the jurisdictional issue, but no evidentiary hearing. Ben & Jerry's Homemade, 921 F. Supp. at 1209. The plaintiff has the burden to show jurisdiction by a preponderance of the evidence if an evidentiary hearing is held. Metropolitan Life, 84 F.3d at 567. Here, where there has been discovery on the issue, but no evidentiary

hearing, Dearwater need only make a prima facie showing.[2]

In a diversity action, personal jurisdiction over a foreign corporation is determined in accordance with the law of the state in which the court sits, "with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Id.  Thus, in determining whether there is personal jurisdiction over the defendant, the court undertakes a two-part inquiry. Id.  First, the court reviews the forum state's long-arm statute. Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).  If jurisdiction is proper under the state's long-arm statute, the court then reviews whether such jurisdiction comports with due process. Id.  The Vermont Supreme Court has held, however, that the state's long-arm statute[3] allows a Vermont court to exercise jurisdiction over defendants "to the full extent permitted by the Due Process Clause."

---

[2] Bond argues that this case is a "hybrid" and asks the Court to evaluate the case on uncontroverted facts in the affidavits rather than taking all allegations in the light most favorable to Dearwater.  The Court declines to apply this elevated standard of review.

[3] Vt. Stat. Ann. Tit. 12 § 913(b)(2002) provides in pertinent part:

> Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

Northern Aircraft, Inc. v. Reed, 154 Vt. 36, 40 (1990).
Therefore, the only inquiry here is whether due process
permits a Vermont court to exercise jurisdiction over Bond.

The Due Process Clause limits the power of a court to
render judgments against nonresident defendants.  Asahi
Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108
(1987).  A court has personal jurisdiction over a defendant
only where defendant has "certain minimum contacts with
[the forum state] such that the maintenance of the suit
does not offend traditional notions of fair play and
substantial justice." Havill v. Woodstock Soapstone Co.,
172 Vt. 625, 626 (2001) (quoting Int'l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)) (internal quotations
and citations omitted).  The Due Process jurisdictional
analysis has been reduced to two parts.  First, the court
evaluates whether the defendant has sufficient "minimum
contacts" with the forum state.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474 (1985).  Second, if sufficient
contacts exist, the court must determine whether an
assertion of personal jurisdiction is "reasonable under the

circumstances of the particular case." Metropolitan Life,

84 F.3d at 567.

1. <u>Minimum Contacts</u>

The guiding principle in evaluating the sufficiency of a defendant's contacts with the forum state is that in each case "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." <u>Burger King Corp.</u>, 471 U.S. at 475. Asserting personal jurisdiction over a defendant based on such action is justified because the defendant "should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980); <u>Artec Distrib. Inc. v. Video Playback, Inc.</u>, 799 F. Supp. 1558, 1560 (D. Vt. 1992). Accordingly, a court should not exercise jurisdiction unless a defendant "actively initiate[s] contacts in [the forum state] state," <u>Artec Distrib. Inc.</u>, 799 F. Supp. at 1560, or "has created 'continuing obligations' between itself and a Vermont resident." <u>Ben & Jerry's Homemade, Inc.</u>, 921 F. Supp. at 1209 (quoting <u>Burger King</u>, 471 U.S. at 476).

The two types of personal jurisdiction a court may exercise are general jurisdiction and specific

jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15 & n. 9 (1984).  Dearwater contends that this Court has both specific and general jurisdiction over Bond.  The Court will address each type in turn.

i. Specific Jurisdiction

Two factors must be present for a court to have specific jurisdiction over an out of state defendant. First, to meet the Due Process "fair warning" requirement, the defendant must have "purposefully directed" its activities at the forum.  Burger King Corp., 471 U.S. at 472.  Second, the litigation must "arise out of or relate to" at least one of those activities.  Helicopteros, 466 U.S. at 414; Sollinger, 655 F. Supp at 1388.

The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Burger King, 471 U.S. at 475 (internal citations omitted). Rather, a defendant "avail[s] itself of the privilege of conducting business [in the forum]" when it "deliberately" engages in significant activities in a state.  Id. at 476. The defendant need not be physically present in the forum

10

"so long as [its] efforts are purposefully directed toward the residents of another State." Id.

Here, Bond has no physical presence in Vermont.  There are no sales representatives or Bond offices in Vermont. Nevertheless, Bond has contacts with Vermont.  Bond has Vermont customers to whom it sells products directly. Similarly, its sales to large chain stores with retail stores in Vermont places Bond products in the stream of commerce with the expectation that they will be purchased by Vermonters.  See World-Wide Volkswagen Corp., 444 U.S. at 297-98(upholding personal jurisdiction on stream of commerce theory where product placed in stream of commerce injures forum customers).  Aubuchon Hardware for example, has 27 retails stores in Vermont. (Paper 23-6).  Bond's employment of Dearwater is also a contact with Vermont to the extent that Dearwater was physically present in Vermont and did call on one of Bond's Vermont clients on at least one occasion.  Despite Bond's preference for a local candidate and intention for Dearwater to relocate to California, it purposefully entered into an employment contract with a Vermont resident and consented – perhaps reluctantly - to his working from Vermont for a period of

11

time.

The job posting on Careerbuilder.com and
Craigslist.com may have reached Dearwater in Vermont, but
its advertisement was for a position in the Western United
States.  Therefore, it does not meet the "purposeful
availment" requirement because Bond was not purposefully
reaching into Vermont, but rather advertising nationally
for a position to be based in California.  That Dearwater
could access the posting from an independent website,
rather than Bond's own website, was fortuitous.

Dearwater's argument for specific jurisdiction,
however, falters in the requirement that the suit "aris[e]
out of or relat[e] to" at least one of the above contacts.
Helicopteros, 466 U.S. at 41.  Here, the dispute is over
Dearwater's employment contract.  Thus, the only purposeful
contact that can be considered in a specific jurisdiction
inquiry is Dearwater's physical presence in Vermont and the
extent to which his employment was directed at Vermont.
The parties agree that Dearwater's position was Vice
President of the Western Division.  They also agree that
Dearwater was supposed to be based in California and
notwithstanding some national responsibilities, the focus

12

of his efforts were to be on the western states. In fact, the employment agreement that Dearwater himself drafted designated California law to resolve any disputes. These facts indicate that the services Dearwater was intended to provide Bond pursuant to his employment contract were to take place outside of Vermont. Indeed, the focus of the contract was not in Vermont despite Dearwater's presence in Vermont and sales visit to a Vermont customer.

Under these facts, the Court finds that the extent to which Bond took advantage of Dearwater's presence in Vermont does not meet the relatedness part of the specific jurisdiction inquiry. Indeed, Dearwater makes no proffer that his calls to Vermont customers were the cause of his termination. While this Court reaches no conclusion as to the cause of Dearwater's termination, it is clear based on the limited discovery thus far conducted, that it has nothing to do with Dearwater's visit to Gardener's Supply or any other of Bond's purposeful contacts with Vermont. Accordingly, the Court does not have specific jurisdiction over Bond.

i. General Jurisdiction

13

General jurisdiction exists when a defendant "maintain[s] continuous and systemic" contacts with the forum.  Helicopteros, 466 U.S. at 414-16.  General jurisdiction is based on a defendant's "general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts."  Metropolitan Life, 84 F.3d at 568; Burger King Corp., 471 U.S. at 473, n. 15, Helicopteros, 466 U.S. at 414, n. 9.  Courts must impose the more stringent "continuous and systemic" minimum contacts test because general jurisdiction is not related to the events giving rise to the suit.  Metropolitan Life, 84 F.3d at 568.  The Due Process fair warning requirement of purposeful availment, *a fortiori*, is also required for a court to have general jurisdiction over a defendant. Burger King Corp., 471 U.S. at 472.  In assessing Bond's contacts with Vermont, the Court should examine the contacts over a reasonable period of time up to the date Dearwater filed suit to assess whether Bond's contacts subject it to general jurisdiction. Metropolitan Life, 84 F.3d at 569.  In addition, the Court should examine the contacts as a whole, rather than individually.  Id. at 570.

14

Two Supreme Court cases provide a road map for the outer limits of what constitutes "continuous and systemic" business operations in a forum state sufficient for general jurisdiction.  In <u>Perkins v. Benguet Consolidated Mining Co.</u>, 342 U.S. 437, 445-46 (1952), the Supreme Court found that the defendant, a Philippine mining corporation, had sufficient general business operations in the forum state (Ohio) where "the general manager and president of the company moved his officer to Ohio during the Japanese occupation of the Philippines during World War II, maintained records, held directors' meetings an generally 'carried on in Ohio a continuous and systemic supervision of the necessarily limited wartime activities of the company.'" <u>Metropolitan Life</u>, 84 F.3d at 571 (quoting <u>Perkins</u>, 342 U.S. at 448). On the other hand, in <u>Helicopteros</u>, the Court found no general jurisdiction where "the defendant had purchased equipment from a company in the forum state, sent personnel to the forum state for training, and sent an officer of the corporation on a single trip to the forum for contract negotiations, but had never performed operations or solicited business within the state or sold any product that reached the forum state."

Metropolitan Life, 84 F.3d at 571 (explaining
Helicopteros).  The Court noted that "mere purchases - even
at regular intervals - and the related brief presence of
employees, did not rise to the level of continuous and
systemic general business contacts contemplated by the
Perkins court.  Id. (internal citations omitted).

Many cases fall between Perkins and Helicopteros.  In
Metropolitan Life, the defendant, Robertson, did not
maintain an office in, or conduct any supervision from,
Vermont.  84 F.3d at 571.  On the other hand, Robertson
solicited business and sold products through Vermont
dealers to Vermont customers.  Id.  Notwithstanding that
"Robertson owned no property in Vermont, and exercised no
control over its independent dealers, the contacts it did
have with the state were more than sporadic and
occasional." Id. at 572.  Specifically, in addition to
Robertson's $4 million in sales over seven years, which
standing alone, may have been insufficient, Robertson's
other contacts supported jurisdiction.  Id.  Specifically,
its relationship with Vermont dealers and "authorized
builders, its [over 150] visits to the dealers and
builders, advertising and support available to Vermonters,

16

and the deliberate targeting of Vermont architectural firms
as sales prospects," provided general jurisdiction. Id.
Similarly, in Sollinger, the court found that it had
general jurisdiction over a defendant who entered, but
never completed a sales transaction with a Vermont
customer, but whose mail-order advertising and solicitation
of Vermonters was a "continuous and systemic, but limited,
part of its general business."  655 F. Supp. at 1389.
Finally, in Provident National Bank v. California Federal
Savings & Loan, 819 F.2d 434, 436 (3d Cir. 1987), the court
found continuous and systemic contacts between the
California bank and Pennsylvania even where the bank
"maintained no Pennsylvania officer, employees, agents,
mailing address, or telephone number and had not applied to
do business in Pennsylvania, did no advertising in
Pennsylvania, and paid no taxes there." Metropolitan Life,
84 F.3d at 572 (quoting Provident National Bank, 819 F.2d
at 436).  The basis of general jurisdiction in Provident
National Bank was that the small proportion of deposits and
servicing of loans conducted on behalf of Pennsylvania
customers "were central to Cal Fed's activities and because
Cal Fed's maintenance of [a particular account held by a

Pennsylvania bank] required Cal Fed to conduct substantial, ongoing, and systemic activity in Pennsylvania." Id. (internal citations omitted).

Although the case at bar is close, Bond's contacts with Vermont fail to meet the stringent "continuous and systemic" test.  Unlike Metropolitan Life, Bond does not have significant contacts with Vermont apart from its sales.  There are no offices or regional sales people; only AMA independent contractors service Bond's Vermont customers from time to time and only when the Vermont customers request service.  Dearwater was present in Vermont, but the focus of his responsibilities was in the western state and his single visit to Gardener's Supply is insignificant compared with the 150 visits Robertson made in Metropolitan Life that were found to justify jurisdiction.  84 F.3d at 566.  Over a seven-year period, Bond's sales in Vermont have ranged between .03% and 2.30% of its total sales.  This small fraction of sales in Vermont is not coupled with any significant advertising, solicitation as in Sollinger, or focus on Vermont as a forum in which Bond intended to operate its business. While the sales to Vermont customers may be ongoing, they

cannot be deemed substantial as in <u>Provident National Bank</u>. Bond's contacts with Vermont are similar to those in <u>Chaiken</u> where the court found that it lacked general jurisdiction over an out of state publisher based on only four copies or .004% of the newspaper's total circulation reaching the forum state. 119 F.3d at 1029.  The court held that "four copies per day, or even the 183 copies of the Sunday edition, [did not] constitute the 'substantial number of copies' that makes it fair to exercise jurisdiction over a non-resident publisher." <u>Id.</u> (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770 (1984)). Similarly, Bond's sales, standing alone, do meet the continuous and systemic standard to allow this Court to exercise general jurisdiction for a breach of contract action.

Further, according to the employment agreement, the parties agreed that California law would apply to jurisdiction and venue.[4]  This suggests that both Dearwater and Bond understood the focus of Dearwater's employment would be in California and conflicts arising therefrom

---

[4] Paragraph 10 of the agreement provides:

> GOVERNING LAW, JURISDICTION AND VENUE.  This agreement shall be governed by and construed in accordance with the laws of the State of California. (Paper 1-3, ¶ 10).

adjudicated under the laws of California.  While a
"substantial connection" to the forum state is possible in
a single contact, by virtue of the undisputed intent that
Dearwater's employment be based in California, his actions
in Vermont while employed by Bond fail to meet the
"continuous and systemic" business presence required for
general jurisdiction. See McGee v. International Life
Insurance Co., 355 U.S. 220, 223 (1957)(finding
jurisdiction from single contract).

Moreover, Dearwater's access to Craigslist and/or
Careerbuilder does not bring this case within the familiar
Zippo spectrum analysis[5] because Bond merely submitted a
job posting, rather than creating and maintaining the
posting websites.  That Dearwater was able to gain access
to the job posting does not mean that Bond conducted
general business relations in Vermont.  In Artec
Distributing Inc., 799 F. Supp. at 1561, this Court held

---

[5] Cases involving the Internet exist along a spectrum.  Zippo Mfg Co. v.
Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  At one end
are those cases in which a defendant actively does business over the
Internet. Id. at 1121, 1124, 1125-27 (entering contracts via computer,
transmitting files, electronic news service downloads sufficient for
jurisdiction); see also CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1260,
1263 (6th Cir. 1996) (jurisdiction proper where defendant transmitted
software via Internet to forum state and used company in forum state as
distribution center). At the other end are those cases in which a defendant
merely posts information on its website.  Zippo, 952 F. Supp. at 1124.
Personal jurisdiction is improper in these "passive" web sites. Id.

that it did not have personal jurisdiction over the
defendant where it did not initiate the business
relationship with the Vermont plaintiff despite purchasing
products from, communicating with, and making payments to
the plaintiff in Vermont.  This Court found that Artec did
not affirmatively seek to do business in Vermont and lacked
sufficient contacts to support the Court's assertion of
personal jurisdiction. Id.  Dearwater similarly reached out
to Bond in his Internet job search, contacted Bond on his
own, traveled to California for interviews, and accepted
the job on the condition that he relocate to California.

2. Reasonableness

    Since Dearwater has not satisfied the first part of
the Due Process inquiry by showing that Bond had sufficient
minimum contacts with Vermont, the Court need not consider
whether asserting personal jurisdiction based on those
contacts is reasonable and does not offend "tradition
notions of fair play and substantial justice." See Burger
King, 471 U.S. at 478.

B. Improper Venue

    Bond also moves to dismiss because of improper venue
under Rule 12(b)(3).  The plaintiff bears the burden of

21

showing that its chosen venue is proper.  Country Home
Products, Inc. v. Schiller-Pfeiffer, 350 F. Supp. 2d 561,
568 (D. Vt. 2004).  The proper venue for a diversity action
is:

> (1) a judicial district where any defendant
> resides, if all defendants reside in the same
> state, (2) a judicial district in which a
> substantial part of the events or omissions giving
> rise to the claim occurred . . . , or (3) a
> judicial district in which any defendant is
> subject to personal jurisdiction at the time the
> action is commenced, if there is no district in
> which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2003).  Where, as here, the defendant
is a corporation, the "corporation shall be deemed to
reside in any judicial district in which it is subject to
personal jurisdiction." Id. at § 1391(c).

Because Bond is not subject to personal jurisdiction
in Vermont, it can not be deemed to "reside" in the state
for purposes of venue.  The only remaining basis for venue
is if a substantial part of the decision to terminate
Dearwater occurred in Vermont.  However, based on the
allegations in the Complaint and affidavits, it is
undisputed that the decision to terminate his employment

took place in California.  Therefore venue in Vermont is

improper.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that Bond's motion to dismiss be granted. (Paper 6).

Dated at Burlington, in the District of Vermont, this 28th day of August, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may appeal this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, a written statement of appeal which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See</u> Local Rule 72.1; 72.3, 73.1; 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(b), 6(a) and 6(e).